IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:19-CR-208-TAV-HBG-3 |
| ESTHER PRIDEMORE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Pridemore's Motion for Release on Conditions and Request for Hearing Pursuant to 18 U.S.C. § 3142(f) [Doc. 83], filed on April 6, 2020. Defendant requests release prior to trial, arguing that there are conditions in place that would reasonably assure her appearance and the safety of the community, particularly in light of the potential exposure to the COVID-19 virus stemming from her detention.

The Court held a detention hearing via video conference on April 13, 2020.[1] Attorney Joshua Hedrick appeared on behalf of Defendant, while Assistant United States Attorney Alan Kirk appeared on behalf of the Government. Attorney Hedrick and Defendant appeared via videoconference.

In consideration of releasing the Defendant pending trial, the Court has weighed the factors set forth in 18 U.S.C. § 3142(g) and finds that the arguments presented at the detention hearing, as well as the Pretrial Services Report ("PSR"), establish by clear and convincing evidence that the

---

[1] Defendant filed a consent to appear by video conference on April 10, 2020. [Doc. 84].

Defendant is a danger to the community, as well as by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the Defendant's appearance as required. Additionally, the undersigned finds that Defendant has failed to show a specific threat of serious complications from contracting COVID-19. Accordingly, Defendant is **ORDERED DETAINED** pending further proceedings in this case.

I.   ANALYSIS

Defendant is charged [Doc. 3] with conspiracy to possess with intent to distribute fifty (50) grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), the possession with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and the possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Defendant signed a waiver of a detention hearing on January 3, 2020 [Doc. 50], and the Court subsequently entered an Order of Detention [Doc. 51].

Defendant now moves [Doc. 83] for release, arguing that there are adequate conditions that may be put in place to ensure her appearance at trial and the safety of the community. Defendant proposes that she be released to live with her mother, Judy Pridemore, who would serve as a third-party custodian. Additionally, Defendant submits that she would accept electronic monitoring or house arrest, random drug testing, and any other conditions set forth by the Court. Lastly, Defendant notes that she is currently detained at the Knox County Detention Facility, and points to the growing danger if the COVID-19 virus were to spread to the detention facility.

Under the Bail Reform Act, the Court must determine "whether there are conditions of release that will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community[.]" 18 U.S.C § 3142(g). In making this determination, the

Court must consider the available information relating to (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the Defendant, (3) the Defendant's history and characteristics, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release." 18 U.S.C § 3142(g)(1)-(4).

Additionally, in an April 6, 2020 Memorandum, United States Attorney General William Barr stated that "the current COVID-19 pandemic requires that we also ensure we are giving appropriate weight to the potential risks facing certain individuals from being remanded to federal custody." *See* Memorandum for All Heads of Department Components and All United States Attorneys, *Litigating Pre-Trial Detention Issues During the COVID-19 Pandemic*, April 6, 2020, *available at* https://www.justice.gov/file/1266901/download. The Court will first address the respective section 3142(g) factors and then analyze Defendant's specific arguments related to the COVID-19 virus.

### A. Section 3142(g) Factors

First, the Court finds that the nature and circumstances of the offense charged argues in favor of detention. 18 U.S.C. § 3142(g)(1). As the Court previously detailed, Defendant is charged [Doc. 3] with conspiracy to possess with intent to distribute fifty (50) grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), the possession with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and the possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). While the parties did not present extensive details on the nature of the charged offenses at the detention hearing, Defendant's charges create a rebuttable presumption that there is "no condition or combination of conditions [that] will

reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3).

Second, the weight of the evidence of the Defendant's dangerousness argues in favor of detention. 18 U.S.C. § 3142(g)(2). In *United States v. Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." 608 F.3d at 948. Further, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Id.* at 947 n.6. Therefore, the Court finds that this factor weighs in favor of detention.

Next, the Court must consider a host of factors in regard to the history and characteristics of the Defendant, which factors the Court also finds weigh in favor of detention. 18 U.S.C. § 3142(g)(3)(A). Here, the Court notes that Defendant has resided in this District for twelve years, along with her mother and two children. While Defendant at one time had a steady history of employment, she reported being unemployed since 2017. Additionally, Defendant admitted to daily substance abuse of cannabinoids and methamphetamines and tested positive for marijuana and methamphetamine during a drug screen prior to her January 3, 2020 Initial Appearance.

In considering these factors, the Court may also consider both actual convictions and arrests or charges to assess the Defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention. *United States v. Tolbert*, Nos. 3:09CR56 & 3:10CR30, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citations omitted). The PSR details Defendant's several convictions for forgery, as well as a July 18, 2011 conviction for theft of property over $10,000. Additionally, Defendant was convicted of the theft of property over $1,000 on August 13, 2013. Defendant was charged with possessing contraband in a penal facility on June 16, 2017,

as well as theft and felony conspiracy charges on October 23, 2017. Lastly, Defendant has several pending drug charges in state court which Defendant submits arise out of the same conduct for which she is charged in the present Indictment.

Equally troubling to the Court, however, is that Defendant committed two previous violations of her probation to the July 18, 2011 convictions for theft of property valued at over $10,000 and forgery. Moreover, Defendant committed a violation of parole on January 29, 2016 for her August 13, 2013 theft conviction, and her parole was revoked after another violation on March 2, 2017. The PSR details case notes from Defendant's state parole officer detailing that she was evading supervision, failed to report several times, and remained non-complaint with the rules of her parole.

The Court also notes that Attorney General Barr detailed that "the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic" should be considered as a part of the defendant's "physical and mental condition." *See* Memorandum for All Heads of Department Components and All United States Attorneys, *Litigating Pre-Trial Detention Issues During the COVID-19 Pandemic*, April 6, 2020, *available at* https://www.justice.gov/file/1266901/download. Here, the Court relies upon its subsequent analysis of the specific arguments regarding COVID-19 in the following section. While the Court acknowledges the general risk of exposure to the COVID-19 virus while detained, Defendant has failed to set forth a specific risk of exposure or that the measures in place during her detention are insufficient to mitigate any such risk.

Finally, under the pertinent part of 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." While Defendant does not have a violent criminal history, the Court notes her

5

multiple violations of her probation and parole, as well as the state probation officer's case notes detailing Defendant's numerous incidents of non-compliance. With regard to Defendant's substance abuse history, the PSR details that Defendant reported using methamphetamine and cannabinoids daily. The United States Probation Office has recommended that the Defendant be detained largely due to the Defendant's criminal history, risk of flight, substance abuse history, and previous criminal activity while under supervision. Accordingly, the Court finds that there are no conditions sufficient to address the concern for danger that the Defendant poses to the community or serious risk of flight.

### B. Effect of COVID-19

Defendant also points to the risk of contracting the COVID-19 virus while detained, as well as the directive of the Tennessee Supreme Court to reduce non-violent offenders. As the Court previously detailed in *United States v. Haun*, No. 3:20-cr-24-4 (E.D. Tenn. Apr. 10, 2020) [Doc. 31], the Court will adopt the reasoning of the Eastern District of Michigan and evaluate "the impact of COVID-19 on the pretrial release calculus . . . [under] the following four factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*United States v. Terry Pruitt*, No. 17-CR-20183-4, 2020 WL 1698661, at *6 (E.D. Mich. Apr. 8, 2020) (citing *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *2 (D. Kan. Mar. 25, 2020)). Although the defendant in *Pruitt* sought temporary release pursuant to 18 U.S.C. § 3142(i), the Eastern District of Michigan found that "[a]lthough these factors have been applied

6

in the context of motions for release under 18 U.S.C. § 3142(i)[2], they are nevertheless relevant under the present procedural posture." *Id.* (addressing where the defendant originally consented to detention before seeking pretrial release).

Defendant is currently detained at the Knox County Detention Facility. The Court is sympathetic to Defendant's concerns and acknowledges the unprecedented nature of COVID-19 pandemic and its effect nationwide and within Tennessee. "[A]s acknowledged by the Centers for Disease Control and Prevention ("CDC"), incarcerated individuals face an even greater risk of transmission, given the conditions frequently present in correctional and detention facilities." *Pruitt*, 2020 WL 1698661, at *6 (citing *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020)). "These conditions include, among other things, the highly congregational environment, the limited ability of incarcerated persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing), and potentially limited onsite healthcare services. *Id.*

However, "a defendant should not be entitled to temporary release . . . based solely on generalized COVID-19 fears and speculation." *Clark*, 2020 WL 1446895 at *3. Instead, "the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary[.]" *Id.*; *see, e.g.*, *Pruitt*, 2020 WL 1698661 at *6 ("While the generalized risks of COVID-19 cannot be disputed, courts evaluating whether pretrial release is necessary must evaluate the particularized risks posed to an

---

[2] Under 18 U.S.C. § 3142(i), the Court may "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

7

Case 3:19-cr-00208-TAV-HBG   Document 87   Filed 04/15/20   Page 7 of 11   PageID #: 228

individual defendant.") (citing *United States v. Lee*, No. 19-20112, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020)).

First, as discussed above, the § 3142(g) factors demonstrate that Defendant presents a danger to the community and a risk of flight, and that no condition or combination of conditions would reasonably assure the safety of the community and her appearance in court. This factor weighs decidedly in favor of Defendant's continued detention.

Next, the Court considers Defendant's specific COVID-19 concerns. While the Court acknowledges the general concerns regarding the spread of the COVID-19 virus at the detention facility, Defendant has only presented generalized concerns about the risk of the impact the COVID-19 virus may have on her if she continues to be detained. The PSR details that Defendant reported that she was in good physical health with only minor medical problems noted. Therefore, this factor does not support Defendant's release. *See United States v. Bell*, No. 17-CR-20183-1, 2020 WL 1650330, at *6 (E.D. Mich. Apr. 3, 2020) ("Second, Bell's concerns are generalized and speculative. Bell has identified no personal health condition rendering him at greater risk of either contracting COVID-19 or developing severe complications from the virus."); *see also United States v. Munguia*, No. 3:19-cr-191-B, 2020 WL 1471741, at *4 (N.D. Tex. Mar. 26, 2020) ("Defendant's argument applies equally to every detainee in detention; however, the Court cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee.").

However, the Court also considers the measures in place to mitigate exposure to the virus in place at the Knox County Detention Facility. In *United States v. Schneff*, No. 3:19-cr-008 (E.D. Tenn. Apr. 1, 2020) [Doc. 41], the Court detailed the measures in place at the Knox County Jail, noting that the detention facility has:

> [S]uspended in-person visits at the jail and "is encouraging inmates to practice 'social distancing', which means staying as far apart as possible" and "advising inmates to avoid shaking hands, [to] wash[] their hands often, [to] not touch[] their face, nose, mouth or eyes, and [to refrain[] from touching 'common areas' throughout the facility." *See* Knox County Jail COVID-19 Visitation Policy, https://www.jailexchange.com/city-and-county-jails/tennessee/knox-county/knox-county-jail/covid-19-coronavirus-visitation-policy (last visited Mar. 31, 2020). Additionally, the Knox County Jail is screening new inmates, screening staff when they report to work daily, and separating and quarantining inmates showing symptoms consistent with COVID-19. *See* Hayes Hickman, *Knox County sheriff: 22 inmates are in quarantine, but none tested for coronavirus*, Knoxville News Sentinel, Mar. 30, 2020, *available at* https://www.knoxnews.com/story/news/health/2020/03/30/knox-county-sheriff-inmates-coronavirus-quarantine/5089468002.

Defendant has failed to point to any confirmed cases of the COVID-19 virus at the Knox County Detention Facility, or that any additional measures in place are not sufficient. Finally, the Court finds no evidence that the Knox County Detention Facility could not provide the Defendant with adequate medical care or transport her to a hospital, if she became seriously ill. *See United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *6 (D. Kan. Mar. 25, 2020). "The mere possibility of an outbreak at [her] facility does not equate to a compelling enough reason to justify [her] release." *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020). Defendant has only put forth a generalized risk of contracting the COVID-19 virus and has failed to demonstrate how the measures in place at the detention facility are insufficient.

Next, the Court reviews whether the proposed conditions of release were tailored to mitigate or exacerbate other COVID-19 risks to the Defendant. While Defendant proposes being confined to house arrest, she does not "identify any COVID-19 precautions being implemented there." *Pruitt*, 2020 WL 1698661 at *7 (citing *Smoot*, 2020 WL 1501810, at *3). Therefore, the Court finds that this factor does not weigh in favor of detention or release.

Lastly, Defendant's proposed conditions of release would increase the risk to others of contracting COVID-19. "A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Clark*, 2020 WL 1446895, at *7. Here, the Court has already detailed that Defendant poses a risk of flight, as well as a danger to the community. Defendant also has a previous history of failing to abide by conditions of probation; therefore, the Court cannot ensure that she would abide by the current conditions of release. *See Pruitt*, 2020 WL 1698661 at *7 ("Pruitt's history of probation violation and nonappearance renders these concerns all the more troubling."); *Smoot*, 2020 WL 1501810 at *3 ("Most importantly, however, Defendant's extensive criminal history establishes that he has 'been unable or unwilling to remain law-abiding for most of his adult life;' hence, the Court 'has no reason to believe that he would suddenly become compliant now.'") (quoting *Clark*, 2020 WL 1446895 at *7). The Court also notes the enhanced personal risk to the probation officers assigned to supervise Defendant, in connection with her previous history of non-compliance. *See, e.g.*, *United States v. Aiad-Toss*, No. 19-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020). Lastly, Defendant's release and potential non-compliance "may increase the risk of infection to the family members with whom [s]he would reside." *United States v. Bell*, No. 17-CR-20183-1, 2020 WL 1650330, at *7 (E.D. Mich. Apr. 3, 2020). Therefore, this factor also weighs in favor of Defendant's continued detention.

## II. CONCLUSION

Ultimately, an examination of specific factors related to Defendant's individualized risk of contracting the COVID-19 virus does not establish that Defendant's pretrial release is warranted.

Further, the Government has proven by clear and convincing evidence that Defendant presents a danger to the community and by a preponderance of the evidence that she is a risk of flight, and that no condition or combination of conditions could reasonably assure the safety the community and her appearance in court. Accordingly, Defendant is **ORDERED DETAINED** pending further proceedings in this case.

    **IT IS SO ORDERED.**

ENTER:

_____
United States Magistrate Judge